JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Clinton Gay, appeals his conviction on two counts of felonious assault and the subsequent sentence imposed. After a thorough review of the arguments presented and for the reasons set forth below, we affirm appellant's conviction, vacate his sentence and remand for resentencing.
 {¶ 2} On May 13, 2005, appellant and codefendant Carolyn Poole ("Poole") were indicted by the Cuyahoga County Grand Jury on two counts of felonious assault, in violation of R.C. 2903.11, felonies of the second degree. This indictment stems from an incident that occurred during the early hours of April 6, 2005, when appellant struck the victim, Freddie Edwards ("Edwards"), numerous times with a baseball bat, inflicting serious injuries. The pertinent circumstances surrounding this incident follow.
 {¶ 3} Appellant and Poole were engaged to be married and were living together at 9403 Bessemer in Cleveland. Across the street from that address, Edwards' mother resided at 9410 Bessemer, a home where Edwards grew up and continued to visit frequently. Edwards was engaged to be married to Theresa Sterling ("Sterling"). The record indicates that these parties were at least acquainted with each other and had interacted with one another prior to the April 6th incident.
 {¶ 4} On April 5, 2005, Edwards went to his mother's residence on Bessemer in the early afternoon and began to drink and socialize. Poole and Sterling were also drinking and socializing together that day, at times across the street at Poole's residence. Eventually appellant arrived home to find Edwards, Poole, and Sterling sitting on his porch. During the course of the day, an altercation occurred between Poole and Sterling that required appellant and Edwards to intervene to prevent it from escalating. The police were not called at that point by any party regarding this initial altercation.
 {¶ 5} In the early morning hours of April 6, 2005, the record indicates that Edwards awoke from sleeping at his mother's house and proceeded to the bus stop to go to his home. While leaving his mother's house, Edwards observed appellant and Poole in the distance, and they appeared to be arguing with one another. Edwards walked over to them to attempt to defuse the situation. As Edwards was approaching appellant and Poole, appellant struck Edwards in the back of the head with a bat. A struggle ensued, during which Poole also attempted to hit Edwards with the bat. Appellant eventually regained control of the bat and struck Edwards again in the head and the back. Edwards testified that being struck in the back was the last thing he remembered until he awoke weeks later in the hospital. Edwards sustained serious injuries from the beating, including the removal of his gallbladder, torn ligaments in his knee, a scar on his forehead, loss of hair growth on his head where he had been struck with the bat, dizziness, and headaches.
 {¶ 6} After striking Edwards, appellant and Poole fled the scene. Edwards, meanwhile, was left lying in the street. A neighbor, Michael Durrette ("Durrette"), eventually came to his aid. Durrette described Edwards' condition as he found him that night as a "bloody mess." (Tr. 121.) The authorities arrived on the scene, and an investigation began. Appellant and Poole were sought by the police, and appellant eventually turned himself in early May 2005.
 {¶ 7} On July 11, 2005, a jury trial commenced. The state presented testimony from Edwards, witnesses Durrette and Kenneth Williams ("Williams"), and Cleveland Police Officers Mark Peysha ("Peysha"), Robert Cupach ("Cupach"), and Detective Joseph Daugenti ("Daugenti"). At the close of the state's case-in-chief, appellant moved for a Crim.R. 29 acquittal, which was denied. He testified on his own behalf, then rested his case. He then renewed his Crim.R. 29 motion for acquittal, which was again denied. The trial court charged the jury, instructing them on counts of felonious assault, as charged in the indictment, aiding and abetting, the inferior offense of aggravated assault, and the affirmative defense of self-defense. On July 15, 2005, the jury found appellant guilty on both counts of felonious assault. Appellant was subsequently sentenced to six years imprisonment on both counts, to be run concurrently. Appellant appeals both his conviction and sentence.
 Jury Instructions {¶ 8} "I. The appellant was denied his right to trial by jury and to present a defense by the trial court's failure to give a jury instruction on the affirmative defense of defense of another."
 {¶ 9} "II. The appellant was denied his right to trial by jury and to present a complete defense by the trial court's erroneous jury instruction on aggravated assault."
 {¶ 10} In his first two assignments of error, appellant challenges the propriety of the instructions with which the trial court charged the jury. He first argues that the trial court erred in failing to instruct the jury on the affirmative defense of defense of another. He further argues that the trial court erroneously instructed the jury on aggravated assault. Upon review of the record, we find these contentions to be without merit.
 {¶ 11} Initially, we note that defense counsel failed to object to any perceived error in the trial court's jury charge. Failure to object to a jury instruction waives any claim of error relative to that instruction, unless, but for the error, the outcome of the trial clearly would have been otherwise. State v.Underwood (1983), 3 Ohio St.3d 12; State v. Nolling (2002),98 Ohio St.3d 44. It is well established that, absent plain error, an appellate court will not consider errors to which the defendant failed to object at the trial level. State v.Williams (1977), 51 Ohio St.2d 112.
 {¶ 12} It is the duty of the trial judge in a jury trial to state all matters of law necessary for the information of the jury in giving its verdict. R.C. 2945.11. Correct and pertinent requests to charge the jury must be given by the trial judge, either as specifically proposed or within the substance of a general charge. State v. Perryman (1976), 49 Ohio St. 2d 14.
 {¶ 13} A defective jury instruction does not rise to the level of plain error unless it can be shown that the outcome of the trial would clearly have been different but for the alleged error. State v. Campbell (1994), 69 Ohio St.3d 38; Clevelandv. Buckley (1990), 67 Ohio App.3d 799. In addition, the plain error rule is to be applied with the utmost caution and invoked only under exceptional circumstances in order to prevent a manifest miscarriage of justice. State v. Copperrider (1983),4 Ohio St.3d 226. Moreover, a single challenged jury instruction may not be reviewed piecemeal or in isolation, but must be reviewed within the context of the entire charge. See, State v.Hardy (1971), 28 Ohio St.2d 89.
 {¶ 14} In his first assignment of error, appellant argues that the trial court erred by failing to instruct the jury on the affirmative defense of defense of another. According to appellant's testimony at trial, it was Edwards who was the aggressor. Appellant contends that he and Poole were standing outside when Edwards came out of nowhere and attacked them with a bat. Appellant then asserts that in the commotion of this attack, the bat somehow bounced into his hands. He claims that once he gained control of the bat, he hit Edwards only in a fashion necessary to repel the attack and defend himself and Poole. Appellant argues that a jury charge on defense of another was warranted in this case.
 {¶ 15} In charging the jury, the trial court properly articulated the crime of felonious assault under R.C. 2903.11, which reads:
 {¶ 16} "(A) No person shall knowingly do either of the following:
 {¶ 17} "(1) Cause serious physical harm to another * * *;
 {¶ 18} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 19} There is substantial credible evidence in the record establishing appellant's guilt. It is undisputed that appellant struck Edwards several times with a bat, which is clearly a dangerous ordnance. It is also clear from the record that Edwards sustained serious physical harm. Appellant must demonstrate that this soundly reasoned finding of guilt by the jury would clearly have been different had the trial court instructed on the affirmative defense of defense of another.
 {¶ 20} The trial court did instruct the jury on the affirmative defense of self-defense, stating:
 {¶ 21} "To establish self-defense, the defendant Clinton Gay must prove, one, that he was not at fault in creating the situation giving rise to this, the assault on Bessemer Avenue;
 {¶ 22} "Two, that he had reasonable grounds to believe and an honest belief that, though mistaken, he was in imminent danger of death or great bodily harm, and that his only means of retreat from such danger was by the use of deadly force;
 {¶ 23} "And, three, he had not violated duty, any duty, to retreat and avoid the danger." (Tr. 440.)
 {¶ 24} This charge accurately defines the elements a defendant must establish to prove self-defense. Reviewing all the evidence presented after being instructed, the jury did not find appellant's version of events credible enough to sustain his affirmative defense of self-defense. Furthermore, "[t]he right of a person to defend another ordinarily should not be greater than such person's right to defend himself." State v. Wenger (1979),58 Ohio St.2d 336, 390 N.E.2d 801.
 {¶ 25} The jury was presented with two versions of the events of the night in question. The state presented a substantial amount of evidence in support of its version with appellant striking Edwards without cause. Appellant, in contrast, testified before the jury contending that Edwards attacked him and his fiancé "out of nowhere," and that he simply took the necessary actions to repel the attack. After weighing the evidence, the jury did not find in favor of appellant's self-defense argument. It is therefore logical to conclude that the jury did not find appellant's version of events credible. In that case, there would be no difference in the verdict had the trial court instructed on defense of another. Thus, we cannot not find that the jury's decision would clearly have been different but for the alleged error in its charge to the jury. Appellant's first assignment of error is overruled.
 {¶ 26} The same reasoning applies to appellant's second assignment of error. Appellant argues that the trial court improperly instructed the jury on the inferior degree offense of aggravated assault. Unlike with appellant's first assignment of error, however, the issue is not that the trial court failed entirely to instruct as to aggravated assault. Appellant's complaint here is that the manner in which the jury was charged as to aggravated assault was not accurate. Again, since the instruction was not objected to at trial, we review the record for plain error.
 {¶ 27} Appellant contends the phrasing of the instruction to the jury as to the inferior degree offense of aggravated assault effectively and improperly portrayed the crime as a lesser-included-offense. However, we do not analyze a single challenged jury instruction in isolation. We review the instruction within the context of the entire charge. Hardy,
supra. A review of the instructions reveals that the trial court made the jury fully aware of the crime of aggravated assault, stating:
 {¶ 28} "Now, an aggravated assault, therefore, occurs when the defendant knowingly causes serious physical harm to another and/or knowingly causes or attempts to cause physical harm to another by means of a deadly weapon while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force." (Tr. 431.)
 {¶ 29} The trial court went on to accurately define each element of that offense. When viewing the jury charge in its entirety, the trial court clearly empowered the jury to find appellant guilty of aggravated assault if it found that appellant had sufficiently proven the element of mitigating circumstances. In order to prove such mitigating circumstances, the jury would have had to believe appellant's version of the events. As shown above, the record indicates that the jury weighed all the evidence and gave more credibility to the state's evidence. It is not clear that the outcome of the jury's verdict would have been different but for the alleged error in the trial court's aggravated assault instruction. Appellant's second assignment of error is therefore overruled.
 Ineffective Assistance of Counsel {¶ 30} "III. Defendant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution."
 {¶ 31} In his third assignment of error, appellant contends he was not afforded effective assistance of counsel. In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984), 466 U.S. 668,State v. Brooks (1986), 25 Ohio St.3d 144. Upon review of the record, we now find appellant did not sufficiently satisfy this standard.
 {¶ 32} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299.
 {¶ 33} With regard to the issue of ineffective assistance of counsel, the Supreme Court of Ohio held, in State v. Bradley
(1989), 42 Ohio St.3d 136, that:
 {¶ 34} "`When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.' State v. Lytle
(1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498,358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States supreme Court in Strickland v. Washington
(1984), 466 U.S. 668. * * *
 {¶ 35} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 (1981).'Strickland, supra, at 691. To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *.
 {¶ 36} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, at 141, 142.
 {¶ 37} Here, appellant argues he was not afforded effective assistance of counsel due to his trial attorney's failure to object to the alleged erroneous jury instructions stated in assignments of error I and II. Since we have found in appellant's first two assignments of error that the outcome of this case would not have clearly been different but for the alleged erroneous jury instructions, we cannot find that the result of appellant's trial would have been different had his attorney objected to these jury instructions. Thus, even if we were to find deficient performance in the trial attorney's failure to object, such alleged deficiency did not rise to the level of ineffective assistance of counsel since a probable difference in the trial's result cannot be established. This assignment of error, therefore, fails.
 Exclusion of Evidence {¶ 38} "IV. Trial court erred and violated appellant's Sixth
and Fourteenth Amendment rights by precluding the use of a witness's prior conviction for impeachment purposes."
 {¶ 39} "V. Trial court erred by failing to admit the police report as requested by the defense."
 {¶ 40} It is well established that pursuant to Evid.R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court. State v. Heinish (1990),50 Ohio St.3d 231; State v. Sibert (1994), 98 Ohio App.3d 412.
 {¶ 41} Appellant's fourth and fifth assignments of error involve the trial court's decisions to limit or exclude evidence. The standard for admission of evidence is well defined in Ohio. "The admission or exclusion of evidence rests within the sound discretion of the trial court." State v. Jacks (1989), 63 Ohio App.3d 200, 207. Therefore, "an appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion."State v. Finnerty (1989), 45 Ohio St.3d 104, 107. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. A reviewing court should not substitute its judgment for that of the trial court. See, generally, Statev. Jenkins (1984), 15 Ohio St.3d 164. Finnerty, supra, at 107-108.
 {¶ 42} An abuse of discretion connotes more than an error in law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. As the Supreme Court has noted:
 {¶ 43} "An abuse of discretion involves far more than a difference in * * * opinion. The term `discretion' itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment, but the defiance thereof, not the exercise of reason but rather of passion or bias." Huffman v.Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87, quoting, Statev. Jenkins (1984), 15 Ohio St.3d 164, 222.
 {¶ 44} Appellant's fourth assignment of error challenges the trial court's ruling that he was not permitted to impeach Edwards's testimony by introducing a prior misdemeanor theft conviction from 1999. Appellant contends the trial court inaccurately found the misdemeanor offense irrelevant and inadmissible, arguing misdemeanor theft offenses are crimes of dishonesty and have been found to be admissible for impeachment purposes. State v. Hughes, Cuyahoga App. No. 81768, 2003-Ohio-2307. While appellant's analysis of the admissibility of this misdemeanor theft offense may have merit, it does not rise to the level of reversible error.
 {¶ 45} As stated above, appellant must establish an "abuse of discretion" on the part of the trial court in making its ruling. "A trial court enjoys broad discretion in admitting evidence. [A reviewing] court will not reject an exercise of this discretion unless it clearly has been abused and the criminal defendantthereby has suffered material prejudice." (Emphasis added.)State v. Nobles (1995), 106 Ohio App.3d 246, 276-277,665 N.E.2d 1137; citing State v. Long (1978), 53 Ohio St.2d 91, 98,372 N.E.2d 804.
 {¶ 46} Viewing the record in its entirely, we cannot find that appellant suffered material prejudice by the ruling of the trial court. The effects of this evidence for impeachment purposes are tenuous at best and do not rise to the level of prejudicial. The outcome of this trial most likely would not have changed, even with the admission of this evidence, and we do not find abuse of discretion in the trial court's exclusion of Edwards' 1999 misdemeanor theft offense.
 {¶ 47} We apply the same logic and reasoning to appellant's fifth assignment of error where appellant argues that the trial court erred in excluding the admission of the police report. Again, regardless of the merits of whether this evidence may or may not have been allowed into evidence, the trial court's decision to exclude it does not rise to the level of abuse of discretion. Appellant's case was not prejudiced since appellant had full access on cross-examination of all testifying police officers to establish inconsistencies in the basis of the underlying investigation. Thus, appellant's fifth assignment of error also fails.
 Sentencing {¶ 48} "VI. The trial court, by considering uncharged and unproven criminal conduct in sentencing appellant, deprived appellant of his liberty without due process and of his constitutional rights to a grand jury indictment, to trial by an impartial jury, to proof of the charges against him beyond a reasonable doubt, to confront the witnesses against him, and to otherwise present a defense."
 {¶ 49} "VII. Trial court deprived appellant of his liberty without due process of law and of his constitutional right to a trial by jury by relying on judge-found facts to impose a `more-than-minimum' sentence."
 {¶ 50} In his last two assignments of error, appellant challenges his sentence. Specifically, with assignment of error VII, he argues that the trial court erred when it imposed a sentence beyond the shortest authorized term. The sentence was imposed pursuant to R.C. 2929.14(B) under the state sentencing structure in effect at the time of appellant's sentencing.
 {¶ 51} The Ohio Supreme Court's recent decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, renders appellant's seventh assignment of error without merit for the purposes of this appeal. In Foster, the Court found several sections of the revised code unconstitutional, including R.C. 2929.14(B), and severed the offending portions from the statutes. As a result, trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or state reasons for imposing more than the minimum sentences. Foster, supra.
 {¶ 52} Because appellant's sentence was based on an unconstitutional statute, it is deemed void. The appellant is entitled to a new sentencing hearing, although the parties may stipulate to the sentencing court acting on the record before it.Foster, supra.
 {¶ 53} In accordance with the decision in Foster involving appeals with sentencing claims pending on review, we vacate appellant's sentence and remand this case to the trial court for a new sentencing hearing.
 {¶ 54} Since our ruling on appellant's seventh assignment of error remands the matter for resentencing, appellant's sixth assignment of error likewise challenging the imposed sentence is moot pursuant to App.R. 12(A)(1)(c).
 {¶ 55} Conviction affirmed, sentence vacated, cause remanded for resentencing.
This cause is affirmed in part, vacated in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, J., and Anthony O. Calabrese, Jr., J.,concur.