[Cite as *State v. Smith*, 2016-Ohio-7708.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 103676

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## IAN SMITH

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588549-A

**BEFORE:** Laster Mays, J., E.T. Gallagher, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** November 10, 2016

-i-

**ATTORNEY FOR APPELLANT**

Gregory Scott Robey
Robey & Robey
14402 Granger Road
Cleveland, Ohio 44137


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:     Edward R. Fadel
        Gregory J. Ochocki
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Ian Smith ("Smith"), appeals his guilty verdict and sentence, asks this court to reverse his conviction, and requests a remand to the trial court for a new trial on the merits. After a review of the record, we affirm.

{¶2} After a bench trial, Smith was found guilty of one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2), and one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A). Smith was referred to probation for a presentence investigation, but failed to appear. Smith was subsequently arrested and sentenced to two years imprisonment.

I.    Facts

{¶3} On August 16, 2014, Smith left an alcohol treatment center without permission and a formal discharge. That same day Smith contacted Leonia Bessert ("Bessert"), his live-in girlfriend and victim, and asked if he could come back home. Bessert agreed. The same day, Smith told Bessert that he was going to return to the treatment center. Smith left their home, but returned in the early evening with a pizza, and discovered Bessert had locked him out of the home. Bessert testified that Smith appeared to be intoxicated because he was stumbling and his speech was slurred. Bessert did not let Smith into the house, but instead told him to sleep it off on the porch. Bessert put a blanket and a pillow on the porch. Smith became upset and forced his way into the home by breaking a window with a shovel, reaching inside to undo the latch, and

pushing the door. At this time, Bessert sat against the door to prevent Smith from entering. Smith shoved the door, moving Bessert across the room.

{¶4} Upon entering the home, Smith grabbed a wooden chair leg and began striking Bessert in the head. According to Bessert, blood began running down her face, and she fled to a neighbor's home, where she called 911. The responding officer, Brian Kluth ("Officer Kluth") testified that when he arrived at the home of Smith and Bessert, he observed a cut on Bessert's head and blood on her face. He testified that Bessert was transported to the hospital where her injuries were treated. Officer Kluth located Smith, found him asleep and under the influence of alcohol. Officer Kluth also testified that Bessert indicated Smith attacked her with a chair leg that belonged to an unfinished chair. He collected the chair leg and placed it in an evidence bag. (Tr. 83.)

{¶5} Detective Clayton ("Det. Clayton"), the detective assigned to the case, interviewed both Bessert and Smith. Det. Clayton testified that Bessert indicated that she had a cut on her head, but it was not visible because she had thick hair. Det. Clayton also testified Smith did not admit to assaulting Bessert. He stated:

> It was Mr. Smith's claim that he was the one who was assaulted and struck with a chair. He did admit that he had been intoxicated. He did admit that he forced his way into the home, but he claimed that he was the one that was assaulted and not her. (Tr. 64.)

{¶6} At the conclusion of the bench trial, the trial court found Smith guilty of felonious assault and domestic violence. Smith was sentenced to two years imprisonment. Smith files this appeal and assigns six errors for our review.

I.    The evidence presented was insufficient as a matter of law to sustain a conviction on the felonious assault count.

II.    The verdicts on both the felonious assault count and the domestic violence count, were against the manifest weight of the evidence presented.

III.    Appellant was deprived the effective assistance of counsel, when trial counsel failed to object to numerous pieces of inadmissible evidence that was unfairly prejudicial.

IV.    The trial court committed critical errors in the trial and the cumulative effect denied appellant due process of law and a fair trial.

V.    The prosecution engaged in affirmative misconduct which denied appellant due process of law and deprived him a fair trial.

VI.    The trial court erred in imposing a prison sentence instead of a community control sanction.

## II.    Sufficiency of the Evidence

### A.    Standard of Review

{¶7} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

## B.  Law and Analysis

{¶8} In his first assignment of error, Smith argues that the evidence presented was insufficient as a matter of law to sustain a conviction on the felonious assault count. Smith was charged with violating R.C. 2903.11(A)(2), which states, "(A) No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."   The appellant argues that the chair leg used to hit the victim cannot be classified as a deadly weapon.

> In accordance with the definition set forth in Ohio Rev. Code Ann. Section 2923.11(A), a deadly weapon must be an instrument capable of killing a person by virtue of its design, or by virtue of its manner of use.  An instrument, no matter how innocuous when not in use, is a deadly weapon if it is of sufficient size and weight to inflict death upon a person, when the instrument is wielded against the body of the victim or threatened to be so wielded.   The manner of use of the instrument, its threatened use, and its nature determine its capability to inflict death.   A deadly weapon may also be defined as an instrument of sufficient size and weight and of such shape and design that it may be grasped in the hands of another in a manner and with sufficient force to kill the other person.

*State v. Zarlenga*, 8th Dist. Cuyahoga No. 55414, 1989 Ohio App. LEXIS 1999 (June 1, 1989).

{¶9} A chair leg in and of itself is not a deadly weapon.   However, Smith used the chair leg to beat Bessert in the head.   "One method of establishing a deadly weapon is through the 'bludgeon theory.'"   *In re Fortney*, 162 Ohio App.3d 170, 2005-Ohio-3618, 832 N.E.2d 1257, ¶ 39 (4th Dist.).

> Under this theory, the prosecution can meet the definition of a deadly weapon even if the weapon in question is incapable of inflicting death by firing a projectile, by proving that the weapon is capable of bludgeoning a person to death.   Moreover, a fact finder may "infer the deadly nature of

an instrument from the facts and circumstances of its use." Other courts have held that a wood stick, when used as a club, may constitute a deadly weapon.

(Citation omitted.) *Id.* We conclude that the chair leg is capable of bludgeoning a person to death coupled with the fact that Smith is 6-feet 6 inches tall and over 300 pounds. We, therefore, find that there was sufficient evidence to classify the chair leg as a deadly weapon, and that the evidence was sufficient to convict Smith of felonious assault. Smith's first assignment of error is overruled.

## III.    Manifest Weight of Evidence

### A.    Standard of Review

{¶10} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "When a party challenges the verdict in a case as against the manifest weight of the evidence, the party is attacking the credibility of the evidence presented." *Id.*

This court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. *State v. Bruno*, Cuyahoga App. No. 84883, 2005-Ohio-1862. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212

(1967), paragraph one of the syllabus; *State v. Eley*, 56 Ohio St.2d 169, 383

N.E.2d 132 (1978). Moreover, in reviewing a claim that a conviction is

against the manifest weight of the evidence, a reviewing court cannot

reverse a conviction unless it is obvious that the trier of fact clearly lost its

way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered. *State v. Garrow*, 103 Ohio

App.3d 368, 370-371, 659 N.E.2d 814 (1995).

*State v. Mallette*, 8th Dist. Cuyahoga No. 87984, 2007-Ohio-715, ¶ 24.

**B.    Law and Analysis**

**{¶11}** In his second assignment of error, Smith contends that the verdicts on both

the felonious assault count and the domestic violence count were against the manifest

weight of the evidence presented. Specifically, Smith argues that his guilty verdict rests

solely on the credibility of Bessert, whom Smith believes is not a credible witness.

> The weight to be given the evidence and the credibility of the witnesses are
> matters primarily for the trier of fact. *State v. Patterson*, 8th Dist.
> Cuyahoga No. 98127, 2012-Ohio-5511, ¶ 13, citing *State v. DeHass*, 10
> Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.
> The trier of fact has the authority to "believe or disbelieve any witness or
> accept part of what a witness says and reject the rest." *State v. Antill*, 176
> Ohio St. 61, 67, 197 N.E.2d 548 (1964). The choice between credible
> witnesses and their conflicting testimony rests solely with the finder of fact
> and an appellate court may not substitute its own judgment for that of the
> finder of fact. *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277
> (1986).

*State v. Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, ¶ 55.

**{¶12}** Furthermore,

> [I]n the trial of a case, when witnesses testify, the trier of the facts, whether it be a jury or the court, determines whether a witness is telling the truth. The trier of the facts may believe all, part or none of the testimony of a witness. This is generally defined as the credibility of a witness, and it is the quality in a witness which renders his evidence worthy of belief. Witnesses testify under oath or affirmation and it is presumed that they are truthful but it is up to the trier of the facts to determine the witness's ultimate credibility. Many times when witnesses testify there are contradictions, disagreements and inconsistencies in their testimony and the trier of the facts must decide who to believe. This involves general credibility.

*State v. Schecter*, 47 Ohio App.2d 113, 119, 352 N.E.2d 617 (8th Dist.1974).

**{¶13}** The trial judge was the trier of fact and determined that Bessert was a credible witness. As the trier of fact, the judge has the authority to believe or disbelieve either Bessert or Smith, or accept part of what a witness says and reject the rest.

**{¶14}** We cannot substitute our own judgment for that of the trial judge. Therefore, we find that Smith's convictions for felonious assault and domestic violence were not against the manifest weight of the evidence. Smith's second assignment of error is overruled.

## IV. Ineffective Assistance of Counsel

### A. Standard of Review

**{¶15}** "Reversal of a conviction for ineffective assistance of counsel requires a defendant to show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Jones*, 8th Dist. Cuyahoga No. 102260, 2016-Ohio-688, ¶ 14.

**{¶16}** "Defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. *See State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989)." *Id.*

> Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).

*Id.*

**{¶17}** In addition,

> To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland* at 687-688, 694; *Bradley* at paragraphs two and three of the syllabus.

*Id.* at ¶ 15.

**{¶18}** Furthermore,

> In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Strickland* at 689. A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69. *Id.* at ¶ 16.

### B.     Law and Analysis

**{¶19}** In his third assignment of error, Smith argues that he was deprived of the effective assistance of counsel, when trial counsel failed to object to inadmissible evidence that was unfairly prejudicial.

When determining whether trial counsel's failure to object constituted ineffective assistance of counsel, we must consider the fact [Smith] was tried before a judge. Even if the challenged testimony was improper, in a bench trial, the court is presumed to have considered only relevant, material, and competent evidence. (Citations omitted.) Accordingly, trial counsel's failure to object could reflect an assumption that the trial court would not be affected by any inflammatory material. (Citations omitted.)

*State v. Stafford*, 8th Dist. Cuyahoga No. 75739, 2000 Ohio App. LEXIS 912 (Mar. 9, 2000).

{¶20} First, Smith contests the fact that his counsel did not object when Bessert stated,

"I think it was like he called me 1 or 2 in the morning wanting to come to the house. I was hesitant to it because of me leaving and him not wanting me to leave in the pattern of him getting abusive when he does drink, but he still needed a place, so I let him come back."

(Tr. 28.)

{¶21} Bessert also testified as follows:

[STATE]:      And when was the next time you saw him?

[BESSERT]:    I don't know if it was like 6 or 7 at night. He showed up with a pizza, and then he wanted to come back in the house. The only reason I was hesitant to let him back in was the night that he was there, he was being very aggressive, cornering me, trying to, you know, be violent. And with our past history of violence happening, I did not feel comfortable letting him in.

[STATE]:      Okay.

[BESSERT]:    And he didn't have his key with him.

[STATE]:      Could you tell if he was drinking?

[BESSERT]:     Very much so.

(Tr. 29.)

{¶22}   Smith argues that this testimony is prohibited by Evid.R. 404(B) and 405, which states,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.   It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Evid.R. 404(B).

> (A) Reputation or opinion.   In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.   On cross-examination, inquiry is allowable into relevant specific instances of conduct.

> (B) Specific instances of conduct.   In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

Evid.R. 405.

{¶23} However, "generally, prior bad acts by a defendant against the same victim are admissible in domestic violence cases to prove the defendant's intent." *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶ 35 (8th Dist.).   Bessert's statements regarding "[Smith] getting abusive when he does drink" was admissible for other purposes such as proof that she had a reasonable basis to fear that Smith may cause physical harm to her.   *State v. Crowley*, 2d Dist. Clark No. 2009 CA 65, 2009 Ohio App.

LEXIS 5605 (Dec. 18, 2009).  The court did not abuse its discretion when it allowed testimony of prior domestic violence in order to prove that the victim had a reasonable basis to fear that defendant would commit physical harm to her, as he had done in the past.  The admission of evidence was not contrary to Evid.R. 404(B).  Thus, Bessert's statements were not prohibited by the rules of evidence, and their admittance did not prejudice him at trial.

{¶24} Under Evid.R. 405, Bessert's testimony was not used to prove specific instances of conduct or his character traits but used as proof that she had a reasonable basis to fear that Smith may cause physical harm to her as reasoned above.  Therefore, we find that Bessert's statements were not contrary to Evid.R. 405.

{¶25} Smith also argues that his counsel was ineffective because counsel did not object to the testimonies of Officer Kluth and Det. Clayton, who both testified as to what Bessert told them about Smith's attack on her.  Smith contends that both testimonies are in violation of Evid.R. 802 because they are hearsay.  "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Evid.R. 801(C).

> Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.

Evid.R. 802.

**{¶26}** However, not all out-of-court statements constitute hearsay. "[W]here statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay." *State v. Blevins*, 36 Ohio App.3d 147, 521 N.E.2d 1105 (10th Dist.1987), citing *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). Both officers testified as to what Bessert told them to explain their conduct while investigating the incident as well as why Smith was arrested. Bessert informed Officer Kluth that she was hit with a chair leg. This statement directed Officer Kluth to collect the chair leg as evidence. Likewise, Det. Clayton was informed that Bessert was injured in the head by Smith. This statement directed Det. Clayton's actions while investigating.

**{¶27}** Appellant also argues that he was prejudiced because Bessert's story was told three times, which had a major impact upon the factfinder and the final verdict. Evid.R. 404(B) states "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or *needless presentation of cumulative evidence*." (Emphasis added.) It was determined that Officer Kluth's and Det. Clayton's testimony was properly admitted into evidence if relevant and of probative value in assisting the trier of fact in understanding their actions while conducting their investigations. The probative value outweighs any prejudice. Additionally, Evid.R. 403(B) does not require exclusion of cumulative evidence. The court has discretion to admit or exclude it. *State v. Campbell*, 69 Ohio St.3d 38, 51, 630 N.E.2d 339 (1994).

**{¶28}** Because this court has found Smith's arguments with regard to his issues in his third assignment of error meritless, the cumulative error issue is also meritless. We find that their testimony was not contrary to the   rules of evidence.

**{¶29}** Lastly, Smith contends that his counsel was ineffective because counsel offered virtually no mitigating evidence to support a sentence of community control. The facts reveal that as counsel tried to offer evidence regarding Smith's circumstances the court would respond that Smith failed to attend.   Smith did not report for his presentence investigation report.   Smith did not attend the interview for placement in veteran's treatment court.   Counsel did state that Smith had the support of family, that the victim moved to St. Louis, and that these events are not likely to reoccur.   Defense counsel went on to request a continuance for sentencing in an effort to provide more information to the court regarding Smith that was denied.   A court's principal concern is not whether counsel should have presented a mitigation case, but whether the investigation supporting their decision not to introduce mitigating evidence of petitioner's background was itself reasonable.   *State v. Herring*, 7th Dist. Mahoning No. 03 MA 12, 2004-Ohio-5357, ¶ 22.

**{¶30}** Smith's counsel's decision to not provide mitigating evidence to support a sentence of community control is sound because Smith was found guilty of felonious assault, a second-degree felony.   A minimum of two years must be served on a second-degree felony, not community control.   *See* R.C. 2929.14(A)(2).

> Even assuming that counsel's performance was ineffective, this is not
> sufficient to warrant reversal of a conviction.   An error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. To warrant reversal, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice.

*State v. Gay*, 8th Dist. Cuyahoga No. 86944, 2006-Ohio-3683, ¶ 35.

**{¶31}** "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id*. at ¶ 36. Smith does not make this showing. Therefore Smith's counsel was not ineffective, and his third assignment of error is overruled.

## V.     Inadmissible Evidence

### A.     Standard of Review

**{¶32}** "Generally, the decision whether to admit or to exclude evidence rests within the sound discretion of the trial court." (Citation omitted.) *State v. Doumbas*, 8th Dist. Cuyahoga No. 100777, 2015-Ohio-3026, ¶ 49. "Therefore, an appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of

whether the trial court committed an abuse of discretion." (Citation omitted.) *Id*. "An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable." *State v. Minifee*, 8th Dist. Cuyahoga No. 99202,

2013-Ohio-3146, ¶ 23, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**B.     Law and Analysis**

**{¶33}** In Smith's fourth assignment of error, he argues that the trial court committed critical errors in the trial, and the cumulative effect denied him due process of law and a fair trial.    Specifically, Smith contends that the trial court improperly permitted inadmissible evidence that unfairly prejudiced him.    This evidence includes Bessert's testimony about her injuries, the chair leg Smith used to hit Bessert in the head, Bessert's testimony about Smith's prior behavior when intoxicated, and Officer Kluth and Det. Clayton's testimony about their investigation.

> The Ohio Supreme Court has recognized the doctrine of cumulative error. *See State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.   Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.   *Id.* at 196-197.   *See also State v Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. Moreover, "errors cannot become prejudicial by sheer weight of numbers."   *State v. Hill*, 75 Ohio St.3d at 212, 661 N.E.2d 1068.

*State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 64.

**{¶34}** The doctrine of cumulative error is not applicable in this case.   Smith makes blanket assertions that he was denied a fair trial by the cumulative effect of the errors made during the trial.   However, he gives no analysis or explanation as to why or how the errors had a prejudicial cumulative effect.   None of the errors committed in this case, when considered either individually or cumulatively, resulted in prejudicial error.

As previously discussed under the other assignments of error, the jury could not ignore the direct evidence that established Smith's guilt.

{¶35} However we have found that there were no errors. "Further, where it is found that the trial court did not err, cumulative error is simply inapplicable." *Id.* at ¶ 66. Therefore, Smith's fourth assignment of error is overruled.

## VI. Prosecutorial Misconduct

### A. Standard of Review

{¶36} "A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial." (Citation omitted.) *State v. York*, 8th Dist. Cuyahoga No. 87814, 2006-Ohio-6934, ¶ 23.

> The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. The effect of the prosecutor's misconduct must be considered in light of the whole trial.

*Id.*

### B. Law and Analysis

{¶37} In Smith's fifth assignment of error, he argues that the prosecution engaged in affirmative misconduct that denied him due process of law and deprived him of a fair trial. Specifically, Smith's arguments are similar to the last two assignments of error. He alleges that the prosecution elicited hearsay testimony from Bessert, Officer Kluth, and Det. Clayton. We have already determined that their testimony did not constitute hearsay. However,

[T]he alleged prosecutorial misconduct can only be a basis for reversal if it rises to the level of plain error. Crim.R. 52(B). Where the plain error analysis is used, the question is whether, absent prosecutorial misconduct, the result of the trial would have clearly been different.

*State v. Ferko*, 8th Dist. Cuyahoga No. 88182, 2007-Ohio-1588, ¶ 24.

**{¶38}** We find that the plain error analysis is not applicable here where the testimony did not constitute error and the result of the trial would not have clearly been different. Smith's fifth assignment of error is overruled.

## VII. Improper Sentencing

### A. Standard of Review

**{¶39}** "An appellate court must conduct a meaningful review of the trial court's sentencing decision." *State v. Shepherd*, 8th Dist. Cuyahoga No. 97962, 2012-Ohio-5415, ¶ 78.

An appellate court must review the record, including the findings underlying the sentence or modification given by the sentencing court. If an appellate court clearly and convincingly finds either that (1) the record does not support the sentencing court's findings under R.C. 2929.14(C)(4), or (2) the sentence is otherwise contrary to law, then the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing.

*Id*.

### B. Law and Analysis

**{¶40}** In Smith's sixth assignment of error, he claims that the trial court erred in imposing a prison sentence instead of a community control sanctions.

R.C. 2953.08 provides the grounds on which a defendant may appeal from a felony sentence. Under R.C. 2953.08(A)(4), a criminal defendant may appeal his sentence if it is contrary to law, and the statute provides two

separate grounds for claiming that a sentence is contrary to law. *State v. Bonds*, 8th Dist. Cuyahoga No. 100481, 2014-Ohio-2766. First, a sentence is contrary to law if it falls outside the statutory range for the particular degree of offense. *State v. Holmes*, 8th Dist. Cuyahoga No. 99783, 2014-Ohio-603,¶ 10. Second, a sentence is contrary to law if the trial court fails to comply with sentencing statutes. *Id.* Thus, a sentence is contrary to law if the court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7.

*State v. Evans*, 8th Dist. Cuyahoga No. 101485, 2015-Ohio-1022, ¶ 31.

**{¶41}** Smith does not demonstrate that his sentence is contrary to law. He was found guilty of felonious assault, which is a second-degree felony. The statutory range for a second-degree felony is two to eight years imprisonment. R.C. 2929.14(A)(2). The trial court sentenced Smith to two years imprisonment, which is the minimum sentence he could receive for a second-degree felony. The record also reveals that the trial court did not fail to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12, which states,

> The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:
>
> (1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
>
> (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
>
> (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
>
> (4) The offense was committed under circumstances not likely to recur.

(5) The offender shows genuine remorse for the offense.

**{¶42}** Smith specifically argues that the court did not consider his lack of juvenile and adult criminal history or the fact that the offense is unlikely to occur again now that Bessert lives in St. Louis. However, the record reveals the following:

> [COURT]: All right. I am going to go ahead and sentence Mr. Smith at this time. I have considered all the principles and purposes of felony sentencing, all the appropriate recidivism and seriousness factors in this matter. I note that you've had extensive treatment for all of your issues, while you were capiased on this case, in New York. You completed successfully those programs. You came back to this area and decided to live, as you say, with a heroin addict, thief, with felony convictions.

(Tr. 181.)

The court continued as follows:

> [COURT]: So as I was saying, at this point, you can't comply with any directions when you're not incarcerated. When you're on your medication, when you're off your medication, if you've had treatment or haven't had treatment, I have great empathy for what you're going through. I really do. At some point, you need to accept some responsibility. You've accepted very little, except you're not making excuses for not showing up for court. If nothing else, you could have showed up on August 11th on your sentencing date. That would be the date to come in here and talk to [Counsel] and have this confusion figured out. And it's just not credible what you are telling me. I heard the victim's testimony, and she was credible to me. And she was injured, and there is no other explanation that I've heard other than you caused her that injury. I'm going to find that you're not amenable to a community control sanction.

(Tr. 182 and 183.)

**{¶43}** We find that the trial court did not error in imposing a prison sentence instead of community control sanctions. Smith's sentence was not contrary to law, and the trial court considered the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. Smith's sixth assignment of error is overruled.

**{¶44}** Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR